IN RE GUARDIANSHIP OF JOHN K. ARRAK; M. O. BAKKEN, Guardian, Appellant.

No. 42354.

118

APRIL 3, 1934.

Cahill, Boland & Hines, for appellant.

Q. A. Quigley and H. J. Luetjen, Veterans' Administration, for appellee.

ALBERT, J.—██ On the 9th day of February, 1925, M. O. Bakken was appointed guardian of John K. Arrak, a mental incompetent. He duly qualified and proceeded to act as such guardian. In April, 1927, the guardian invested the sum of $1,000 of the guardianship funds in a note and mortgage covering certain land in Winnebago county. The guardian made annual reports in the years 1928 and 1929, and they were approved by the district court of Winnebago county. In October, 1929, on application, the district court authorized the guardian to foreclose this mortgage, which he did, and bought the land as guardian at the sale. Subsequently he made four reports in which he set out that on foreclosure of the mortgage title was taken by himself as guardian. Each of these reports was approved by the Veterans' Administration and the district court of Winnebago county. The last annual report, dated March 25, 1933, was objected to by the Veterans' Bureau.

Appellee in argument states:

"Appellee does not question the good faith of the guardian. The objection of appellee which was sustained by the court is not to the type of the investment or the adequacy of the security. The objection of the appellee is that the purchase of the investment, a transaction wherein the guardian dealt with himself, is prohibited by law."

This objection is based wholly on the testimony of the guardian. It appears from his testimony that the mortgage in question was made on the 31st day of January, 1923, by L. J. Holland and wife to M. O. Bakken. Bakken testifies that at the time he took the mort-

gage in question the land covered by the mortgage was worth $100 an acre, and that Holland and his wife were considered solvent. He further testifies that, when he took the mortgage from Holland in his (Bakken's) name, the loan was of $1,000 belonging to his sister, and that his sister did not know the makers of the note and mortgage, and that Bakken gave his sister his individual note for $1,000 and took the Holland paper, and that he then used $1,000 out of this guardianship money to pay his sister for this note and mortgage. He reported to the court that he had title to this property, acquired by reason of the foreclosure sale, and asked credit for the amount invested therein in his report, and this is where the Veterans' Administration objected and protested. While it is true that Bakken testifies that the mortgage and note in the first instance belonged to his sister, the district court found against him on this proposition, and, this being an appealable law action, we are not in position to disturb this finding. We therefore must hold that in the purchase of this mortgage and note with the funds of the guardianship the guardian was dealing with himself.

We are then confronted with the real question in the case, whether or not, when a guardian uses funds of his ward in dealing with himself, the court should allow him credit for the funds thus invested. While this question has never been squarely decided in this state, we are disposed to hold with the general rule that transactions in which a guardian uses funds of his ward in dealing with himself are void, and he should not be entitled to credit in his reports for the funds thus invested. An investigation of all the reports filed by the guardian herein shows that in none of them was the court advised that in the purchase of this mortgage and note this guardian was dealing with himself. This being true, whatever approval was made by the court to said reports is not binding, and the court has the right to go behind said reports and determine what the real transaction was. The record does not show that the court ever made any order authorizing this guardian to purchase this mortgage and note.

We said in In re Guardianship of Pharmer, 211 Iowa 1285, loc. cit. 1287, 235 N. W. 478, 479:

"Guardians in the management of their wards' estates can only act under the authority of the court. Section 12581, Code 1927."

In the same case we further said:

"It may be granted that the guardian acted in good faith. * * * The wards cannot be prejudiced or required to suffer the loss of their estate because of the imprudent and unauthorized investments of the fund by the guardian, notwithstanding that same may have been made in good faith and in the belief that they were for the best interests of the estate. The wards cannot be compelled to accept the property in question which has greatly depreciated in value and is worth much less than the original investment, notwithstanding the decline continued after the wards attained their majority. The court permitted recovery of the actual amount coming into the hands of the guardian, plus interest."

It might be said in passing that there has been a vast depreciation in the value of this estate in the last few years. There is nothing in the record showing the value of this property at the time of the trial, and it is fair to assume that, although the same may have been worth $100 an acre at the time the mortgage was taken, it is now worth very much less than that.

The courts have gone a long way in protecting the property of wards. The Kansas court, in the case of Sowers v. Pollock et al., 112 Kan. 599, 212 P. 103, 30 A. L. R. 458, holds that the probate court has no authority to authorize a guardian to borrow and use for his own purpose practically the entire fund committed to his care, upon his promissory note without security, and that such order is void and affords no protection to the guardian, nor would it relieve the sureties on his bond from liability for misuse of the trust fund.

It is the quite uniform rule that a guardian cannot purchase, use, or in any way deal with his ward's property for his own benefit or profit. A collation of the holdings of all the states of the Union on this proposition will be found in 28 C. J. p. 1154, sec. 265, n. 23.

A study of our cases, while not squarely passing on this proposition, shows the drift toward the correctness of the rule here announced.

In the case of In re Skinner's Estate, 215 Iowa 1021, 247 N. W. 484, we had before us a trust estate in which the trustee loaned money to himself and purchased land for himself therewith and improved such land with the trust funds. This was done without an order of court permitting the same. We there said (loc. cit. 1029) :

"In the case at bar it is evident that the trustee acted for his own benefit rather than for that of the trust estate. When loaning the trust moneys to himself, the trustee acted secretly for his own benefit without the knowledge or consent of the beneficiaries. It is apparent also, as before indicated, that the security now offered to the beneficiaries by the trustee in his report is not that contemplated by the trust contract. On the other hand, such security is far below the standard set by the trust agreement."

Our conclusion is therefore that this guardian had no authority whatever to invest the money of the estate in the mortgage and note which was held by him only in his private right.

One other question is raised, and that is that the Veterans' Administration had no right to appear in this case and object to this report. We cannot agree with this contention, because the congressional enactment which created this fund and authorized this guardianship specifically provides for such appearance. See Acts of Congress, World War Veterans' Act 1924, sec. 21, par. (2), as amended by Act of May 29, 1928, 38 USCA sec. 450, par. (2).

When the guardian shall have accounted for the amount in the investment, then the district court shall make an order directing Bakken, as guardian, to execute to himself a deed to the land involved in this controversy.

We conclude that the decision of the district court in this respect was right, and it has our approval.—Affirmed.

CLAUSSEN, C. J., and EVANS, KINDIG, and DONEGAN, JJ., concur.