IN RE GUARDIANSHIP OF EARL M. FISH, Incompetent; A. L. FISH, Guardian, Appellee.

No. 42957.

JANUARY 14, 1936.

Q. A. Quigley and H. J. Luetjen, Veterans' Administration Facility, for appellant.

Harrington & Lowe, and Tom Kirby, for appellee.

DONEGAN, C. J.—In December, 1921, A. L. Fish was appointed guardian of the property of his incompetent son, Earl M. Fish. Earl M. Fish had been a soldier in the World War, and all his property that came into the hands of the guardian consisted of insurance, compensation, and gratuities paid to him by the United States government for the sole use of his ward as an incompetent World War veteran. On the 7th day of March, 1934, the guardian filed his resignation as guardian accompanied by his final report. A time was fixed for hearing on this report and notice thereof given to the Veterans' Administration, which filed objections to the approval of said final report. The parts of said objections with which we are here concerned are those which have reference to a loan of $6,000, secured by a mortgage on 80 acres of land in Worth county, Iowa, and to four separate certificates of deposit of $100 each in the Citizens Savings Bank of Hanlontown, Iowa.

Upon the hearing before the district court, it was held by that court that the guardian was personally liable and should account in cash to his successor for the four certificates of deposit of $100 each and interest thereon, but that he was not personally liable and should not be required to pay his successor in cash the amount represented by the loan on the 80 acres of land in Worth county, Iowa, and an order and judgment was entered accordingly. The Veterans' Administration appeals from that portion of the order and judgment which approved the loan of $6,000 of the guardianship funds, and the guardian appeals from that portion of the order and judgment which held him liable to account in cash to his successor for the amounts represented by the four $100 certificates of deposit in the Citizens Savings Bank of Hanlontown, Iowa. The Veterans' Administration, having first perfected its appeal, will hereafter be referred to as the appellant, and the guardian will be referred to hereafter as appellee.

The loan of $6,000, to which objection was made, is represented by a note secured by a mortgage on 80 acres of land in Worth county, Iowa, both signed by A. L. Fish and his wife in

favor of A. L. Fish, guardian. Appellant contends that the trial court had no right to approve the report in so far as it dealt with this item of the guardianship property, because in making such loan the guardian was borrowing and using the funds of the guardianship for his own benefit, and because, contrary to statutory requirement, the real estate upon which the loan was made was of less than twice the value of the amount of the loan.

The note and mortgage here involved were executed on the 14th day of April, 1926, and the mortgage was recorded on the 11th day of May, 1926. It appears that prior to that time the ward had been living with the guardian, who was his father; that the father owned no real estate and had no permanent home; that in June, 1925, the guardian made application to the court for authority to invest funds; that this application showed $6,122.44 on hand, all on deposit in a bank; that the guardian was receiving monthly the sum of $100 from the United States government; that he believed it would be for the best interests of the ward to invest $6,000 of said funds in real estate security; that he had an opportunity to purchase 80 acres of land in Worth county, which he believed of the reasonable value of $8,000. The application asked that the guardian be authorized and directed to loan $6,000 of the guardianship funds to himself and to execute to himself as guardian a first mortgage on said 80 acres of land, due five years from March 1, 1926, with interest at 5 per cent payable annually. Upon hearing, the court, on the 6th day of July, 1925, entered an order authorizing the guardian ''to loan not more than six thousand dollars ($6000) of the funds of said ward to himself, or any other reasonable party, and to take therefor, a first mortgage on not less than eighty (80) acres of real estate of sufficient value to make said loan secure; said loan to draw not less than five per cent interest, payable annually.''

The statute in effect at the time the application was made by the guardian and the loan authorized by the court, and at the time the loan was consummated, was section 12772, Code of 1924, the provisions of which, so far as applicable to this case, are as follows:

''12772. Authorized securities. Where investments of funds are to be made, including those to be made by executors, administrators, trustees, and guardians, and no mode of invest-

ment is pointed out by statute, they may under order of court be made: * * *

"In bond or mortgage upon real property of the clear unincumbered value of twice the investment."

Leaving out of consideration for the instant the question as to the value of the property securing the loan, it is appellant's contention that neither the authorization of the loan before it was made nor the approval of the final report contained in the order of the trial court in this case can validate the loan, because any loan of guardianship funds made by a guardian to himself is contrary to law and void. Numerous authorities are cited in support of this contention. Among the cases cited, particular reliance seems to be placed on In re Estate of Holley, 211 Iowa 77, 232 N. W. 807; In re Estate of Skinner, 215 Iowa 1021, 247 N. W. 484, 488; In re Will of Riordan, 216 Iowa 1138, 248 N. W. 21; In re Guardianship of Arrak, 218 Iowa 117, 254 N. W. 307.

It is claimed by appellant, and the language in some of these cases appears broad enough to support the claim, that all dealings by a guardian with himself in transactions involving the property of his ward are not merely voidable but are void, and that a court order authorizing or approving such dealings can be of no effect. In the Holley case, no such dealings had occurred. The trial court sustained a demurrer to an application made by trustees for authority to sell some of the trust property to certain of the trustees, and the language used by this court was in connection with its opinion affirming the trial court's ruling. In the Skinner case, the question arose upon the final report of a trustee who had used trust funds for his own purposes in purchasing and improving lands, without the knowledge or consent of the beneficiaries and without any authority of court. In approving the lower court's order requiring him to account in cash for the funds thus loaned, this court said: "It is apparent that the district court could properly find, as it did, that the appellant breached his trust, appropriated the trust funds to his own use, and, in fact, converted the same."

In the Riordan case the trustee was an incorporated trust company, and there was a commingling of the trust funds with the funds of the trustee, and a purchase of securities owned by the trust company with funds belonging to the trust. The pur-

chase of these securities was made pursuant to an order of court, but the application for such order concealed the fact that the securities were owned by the trust company. In the Arrak case the guardian purchased from himself, with guardianship funds, a note and mortgage owned by him as an individual. It was held that, as there was no order of court authorizing the purchase and no report showing the transaction made to the court and approved by it, and as there was a presumption that the property securing the note had greatly depreciated in value, the guardian was rightly held liable to account in cash for the funds used in this investment. Both the Arrak case and the Skinner case expressly leave open the question as to whether a district court may ever be justified in authorizing a guardian or trustee to borrow from the trust estate.

While our cases may have gone to the extent of establishing the rule that a guardian cannot purchase guardianship property or borrow guardianship funds for his own benefit, and that an order of court will not protect him in such a transaction, even though he act in good faith, we do not think these cases go to the extent of holding, as contended by appellant, that a loan by a guardian of guardianship funds to himself must in all cases be held to be void. In Des Moines Savings Bank v. Krell, 176 Iowa 437, 156 N. W. 858, 859, a widow was appointed guardian of her minor children to administer funds belonging to them. Objection was made to her report which showed the expenditure of guardianship funds for dry goods, groceries, and house furnishings, some of which were for her own use. While finding the guardian liable for certain worthless loans made by her, the probate court overruled the objections as to many of the expenditures of the guardianship funds made by her for her own benefit. In that case, as in this, the legal propositions concerning the guardian's unlawful acts were fully presented, and Mr. Justice Evans, in expressing the opinion of this court, said:

"The general legal propositions urged by the plaintiff at this point are quite unassailable. It is doubtless true as a general proposition that the estate of these children cannot properly be charged with expenditures which do not fairly operate to the benefit and best interest of the children themselves. Even then it does not necessarily follow that the expenditures must be confined to food actually consumed or clothing actually worn by

the wards. The case before us is illustrative of the exceptional circumstances which may properly call for a considerable discretion on the part of the probate judge as to the nature and scope of the expenditures which may be properly approved. The case is one where there was no bad faith on the part of the mother and no lack of effort on her part to do her utmost in behalf of her children. What have sometimes been called 'fireside equities' appear as a background to those facts which more directly concern the court.''

After citing facts showing the condition in which the mother was left with her minor children, the opinion proceeds to say:

''She was between two alternatives. One was to seek permanent employment and to hire some one else to care for her children. The other was to abandon employment and devote herself to the care of her children. Under the approval of the probate court she adopted the latter course. It necessarily involved more or less expenditure of the estate of the children in the support of the mother while she was rearing them. She had no estate of her own. She had no means of making a living that would be consistent with her care of her children. We think it was within the sound discretion of the probate court to find that the best interests of the children required that they should be in charge of their mother, and that she should make a home for them as far as she could; and, in the absence of any estate owned by the mother, that the expenditures of such an arrangement within reasonable limits should be paid by the estate of the children. We would not make light of the duties of parents as guardians to conserve the estates of children which may come into their hands, nor would we absolve them from the duty of bearing for themselves the ordinary burdens and expenditures of their own families where they have the ability or the means to do so. And this rule is especially applicable where the estate of the parent is considerable and the estate of the child is comparatively small. It does not follow, by any means, that a child and its parent must be held to poverty and dangerous privation during the years of its minority in order to preserve intact a considerable estate of such child, when the best interests of such child require that a home be maintained for it by the parent. In the administration of such a trust under such circumstances we know of no better or safer rule of reason on the one

hand, or of restraint on the other, than the sound discretion of the probate court in the light of all the circumstances of the case. We think that the discretion of approval which was exercised in the case exhibited by this record, was within proper bounds and furnishes no just ground for our interference.''

■■ The evidence in the instant case shows that the ward is incompetent, with apparently no probability of his recovery. The guardian, who was the father of the ward, owned no real estate other than the 80 acres purchased by him with the aid of the loan from the guardianship funds. The guardian testified that one of his reasons for purchasing the farm was to provide a permanent home for the ward. From his testimony it may be properly inferred that the guardian had a fatherly affection for his son and that the son's welfare might be much better secured by his remaining with the father than if committed to the care of some other person or institution. No question arises as to the good faith and honesty of the guardian throughout the entire transaction. No haste is evidenced in putting over the deal, no deception was practiced, and nothing concealed from the court. The application for authority to make the loan was made in June, 1925, the order thereon was entered in July of the same year, and the loan was not made until the following spring when the deed for the land was executed to the father, A. L. Fish. The application fully stated just what was to be done in connection with the loan, and subsequent reports of the guardian, some of which were known to and not objected to by the Veterans' Administration, showed what had been done. This loan was made in the spring of 1926 and, so far as the record shows, the guardian still owned and occupied the home purchased with the aid of this loan, and the ward still had the benefit of that home and of a family life at the time this case was tried in 1934. There is no showing that the ward's estate has suffered any pecuniary loss growing out of this loan, but the loss of his home might be the result if a forced sale be ordered to provide the cash with which to repay the loan at this time.

■■ We think the facts in this case were such that a court might properly find therefrom that the permanent home provided for the ward by means of the use made of his funds would be of much more benefit to him than if such funds had been used for his care and support in some other manner. In our opinion,

this case is controlled by the principles announced in Des Moines Savings Bank v. Krell, supra, and the court that authorized the loan, as well as the trial court that approved the final report in regard thereto, both had a discretion in the matter. The facts were such that they might have found therefrom a basis for the approval of the loan which was made by them, and their finding of facts having the effect of the verdict of a jury cannot be disturbed by this court.

█■█ It is further contended that the loan should not have been authorized and could not be approved, because the property given as security was not of the clear unencumbered value of twice the investment. The only evidence before the trial court in regard to this matter was that of the appellee-guardian and one other witness. The evidence is undisputed that the 80 acres was purchased for $100 an acre, or $8,000. Appellee's evidence was that he paid $2,000 in cash for the property, in addition to the $6,000 borrowed from the guardianship funds, and that he made a great many improvements on the property which made it of the value of approximately $150 to $185 per acre after the improvements had been placed upon it. The testimony of the other witness fixed the value of the land, after the improvements had been placed upon it, at from $140 to $150 per acre. Appellee placed the value of the land, at the time of its purchase and without the contemplated improvements, at $110, and the other witness placed its value at from $110 to $125 per acre without such improvements. Appellee further stated that, at the time of the trial, the land would probably not bring more than $100 per acre on a forced sale, and the other witness stated that, at that time, if the property was his, he would not take $125 per acre for it. We think there was sufficient evidence upon which the trial court could have found that the value of the land complied substantially with the requirement of the statute, and, that being true, its decision must stand.

█■█ As to the guardian's appeal from the portion of the order and judgment requiring him to account in cash for the four interest-bearing, time certificates of deposit representing deposits of $100 each, made by him in the Citizens Savings Bank of Hanlontown, Iowa, we think it unnecessary to go into any extended discussion. Under our cases, it has been clearly held that deposits made and represented by such certificates of deposit, as were the four deposits in this case, are investments, and

that such investments cannot be made without securing the authority of the probate court therefor. See In re Guardianship of Fahlin, 218 Iowa 121, 254 N. W. 296, and cases therein cited. Such authority was not secured in this case, and the guardian is, therefore, personally responsible and must be required to account for the funds of the guardianship represented by said certificates of deposit. It is contended by the guardian, however, that as all of these certificates of deposit had become due prior to the time that the bank closed its doors and were not paid, the money represented by them, after they became due, became deposits as distinguished from investments; and that, as the guardian was required only to use ordinary care in making deposits, he could not be held accountable for the full amount thereof in this case. No authority has been cited by the guardian in support of this contention, and we fail to see any force in the argument presented in support thereof.

We find no reason for interfering with the order and judgment of the trial court, either on the grounds submitted by the appellant or those submitted by the appellee, and said order and judgment are therefore affirmed.—Affirmed.

ANDERSON, HAMILTON, PARSONS, POWERS, and RICHARDS, JJ., concur.