# IN THE SUPREME COURT OF IOWA

No. 18–1235

Submitted April 15, 2021—Filed May 21, 2021

**IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF MARVIN M. JORGENSEN,**

**ROXANN WHEATLEY, RICK WHEATLEY,** and **DALLAS WHEATLEY,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Audubon County, Kathleen A. Kilnoski, Judge.

Two of the ward's children and the court visitor request further review of a court of appeals decision affirming in part and reversing in part the district court's order modifying farm leases entered into by the ward's conservator. **DECISION OF THE COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

McDermott, J., delivered the opinion of the court, in which all justices joined. Waterman, J., filed a special concurrence.

Eldon L. McAfee (argued), Julia L. Vyskocil, and Daniel P. Kresowik of Brick Gentry, P.C., West Des Moines, for appellants.

Deborah L. Petersen of Petersen Law PLLC, Council Bluffs, for appellee Michael Jorgensen.

Alexander E. Wonio and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellee Mark Jorgensen.

Leo P. Martin (argued) of Peters Law Firm, P.C., Council Bluffs, court visitor and former guardian ad litem for Marvin M. Jorgensen.

**McDERMOTT, Justice.**

Marvin Jorgensen suffered a stroke in 2016 that left him unable to manage his nearly 18,000 acres of Iowa farmland. Before his stroke, Marvin had leased almost half his farmland to his children and several grandchildren in "handshake" agreements that Marvin never put in writing. One set of family members generally didn't know the rental rates that Marvin provided to another. After the stroke, Marvin's court-appointed conservator entered into new written leases with family members that were intended to continue with Marvin's practice of rent discounts from market rates. The conservator included—at the unanimous recommendation of all three of Marvin's children, each of whom had handshake leases with Marvin—a $40-per-acre discount with a lease term lasting until 2030.

But about six months after signing the written leases, in the midst of clashes among family members that continued to surface involving Marvin's farmland, the conservator filed a motion seeking direction on whether the farm leases it entered into on Marvin's behalf were appropriate. Marvin's two sons came forward claiming to have misrepresented facts surrounding Marvin's prior rent discount practices that the conservator relied on when it entered into the written family leases. The district court concluded the leases were inconsistent with Marvin's past practices and reformed the leases to provide a $25-per-acre discount. On appeal, the court of appeals reversed the district court's ruling as to the reformation of the conservator's farm leases with Marvin's daughter.

On further review, Marvin's sons and guardian ad litem ask us find the district court in this situation had the power to reform the family leases that the conservator entered into on Marvin's behalf or, alternatively, to

find the discounted rental rate in the family leases constituted an unauthorized "gift" that separately supports the district court's reformation of the leases.

I.

Because this is an equitable proceeding, we recite the facts as we find them in our de novo review. Iowa Code § 633.33 (2017); *Smith v. Harrison*, 325 N.W.2d 92, 93 (Iowa 1982). Marvin had three children: Michael Jorgensen, Mark Jorgensen, and Roxann Wheatley. After Marvin's stroke, disagreements flared among the children concerning the handling of his ongoing affairs. The three children, along with Marvin's guardian ad litem (attorney James Mailander), Marvin's conservator (Security National Bank), one of Marvin's grandsons, and their respective attorneys, all participated in mediation to resolve their disputes. The mediation produced a settlement memorialized in the "Jorgensen Family Settlement Agreement." The first paragraph of the family settlement agreement states: "The Parties desire to reconcile their differences, preserve Marvin's testamentary intent[,] and facilitate their future mutual cooperation." Security National Bank agreed to serve as Marvin's conservator "provided that Mark, Roxann, and Michael agree to form a Family Council to provide it with assistance and guidance regarding the management of Marvin's estate."

The newly-created family council that the three siblings formed would provide "guidance and assistance" to the conservator in discharging the conservator's duties. The conservator agreed to give "due deference, which will not be unreasonably withheld, as to matters and issues on which the family council unanimously consents, in writing and signed by all parties," so long as the action didn't contravene Marvin's intent or the conservator's fiduciary duties. The family settlement agreement stated

that determinations of Marvin's intent would take into consideration his "past course of dealing with his children and their family members."

The family settlement agreement included an attached "Family Recommendation to Conservator" signed by all three family council members. In the recommendation, the siblings unanimously recommended to the conservator that (1) "[a]ll current farm leases will remain in effect"; (2) "[a]ll farm leases shall be extended to the year 2030"; and (3) "[r]ents will be calculated at the Iowa State University cash rent for medium quality ground, effective March 1, 2018 less $40 per acre as per past course of dealing."

Marvin's guardian ad litem filed an application seeking the district court's approval of the family settlement agreement with the attached family council recommendation. No one filed an objection or requested a hearing on the application. The district court entered an order approving the family settlement agreement on January 31, 2017.

In May, the conservator filed an application seeking the court's authorization and direction to enter into leases and other agreements to manage Marvin's farmland. Marvin's guardian ad litem (a new one, attorney Clint Hight, who replaced Mailander in April) filed an answer to the conservator's motion stating that it would be in Marvin's best interests "to authorize the Conservator to perform the acts requested in the said applications as long as the Conservator gives appropriate consideration to the family settlement agreement filed herein on January 31, 2017 and exercises such authority in accordance with their fiduciary duty to the ward." The district court granted the application and ordered the conservator to enter into the leases.

The conservator did as ordered. By September, the conservator had signed farm leases on Marvin's behalf with all family-member tenants. The

leases included, as set out in the recommendation attached to the family settlement agreement and urged by Marvin's guardian ad litem, a $40-per-acre discount from the Iowa State University cash rental rate and a lease term that ran to 2030.

By late fall, new disputes started flaring among the siblings. The issues included, for instance, whether the new leases permitted Michael free access to Roxann's farmland for winter cornstalk grazing for his cattle herd, a practice Michael claimed their father had always allowed, and whether land previously set aside in a crop reserve program should have been included in a lease with Michael or with Roxann's son Dallas Wheatley. So in February 2018, about six months after the family leases had been signed, the conservator filed an application asking the district court to review issues surrounding the farm leases. The conservator made reference to having not been informed of Marvin's past practices in permitting the winter foraging on other tenants' properties, and to criticism that the conservator hadn't properly looked out for Marvin's best interest when it entered into leases with the $40-per-acre discounts and lengthy lease terms. The conservator asked the district court to determine whether it had complied with its fiduciary duties to Marvin when it gave deference to the family council's recommendation on the leases and requested that the court either adjust the family members' leases or confirm the propriety of the existing leases.

In the course of the siblings' new dispute, Michael and Mark indicated that the $40-per-acre rent discounts were in fact *inconsistent* with Marvin's prior practice—contradicting the family council recommendation they'd each signed more than a year earlier. When questioned at a hearing about what had caused him to change his position on this issue, Michael testified that he'd recently learned that before his

stroke, Marvin had spoken with a farm management company about managing his farm properties and, based on that discussion, the farm management company presented Marvin with a proposal that would have provided a $25-per-acre discount to family members. Michael thus seems to have disputed not the fact that Marvin provided his family members rent discounts but merely the amount of the discounts. Mark claimed his father provided his children no discounts on rent. Roxann, for her part, maintained that the discounts in the new leases were consistent with Marvin's past practice (if anything, not as extensive) and that no legal basis existed to modify the leases.

The district court ordered the guardian ad litem to negotiate a contract with one of the farm management companies that Marvin had spoken with (but didn't retain) to manage all Marvin's farmland in place of the conservator. The court then directed the to-be-retained farm management company to rewrite all the family leases to include only a $25-per-acre discount as opposed to the $40-per-acre discount in the existing family leases. The district court also directed the farm management company to reform the existing leases to prohibit subleasing at a profit and to correct certain errors the court found in describing who had leased two particular farms (the Chappel farm and the Snake farm) as between Michael and Dallas. The district court's order also dissolved the family council that had been created in the family settlement agreement.

The district court's ruling made no comment on the credibility of any witnesses and made no finding of misrepresentation or fraud associated with the conservator's existing leases. Rather, it found the existing leases "the product of too many errors" and deemed the $40-per-acre discount "not prudent," particularly considering the length of the leases.

Both Roxann (with her husband Rick Wheatley and son Dallas) and the conservator filed motions to amend or enlarge the district court's order under Iowa Rule of Civil Procedure 1.904(2). In response, the district court clarified that it was terminating the family settlement agreement (in conjunction with dissolving the family council), and made other relatively minor changes to particular findings or conclusions, but left unchanged the substance of the original ruling.

The Wheatleys appealed. The court of appeals affirmed in part and reversed in part the district court's ruling, holding principally that the district court lacked authority to reform the Wheatleys' leases with the conservator. Michael, Mark, and Marvin's guardian ad litem (a new one, attorney Leo Martin, who replaced Hight shortly after the Wheatleys appealed) sought further review, which we granted. While this case remained pending on appeal, Marvin passed away at the age of 92. Attorney Martin thus continues in this appeal as "court visitor" under Iowa Code section 633.562 (2020) instead of guardian ad litem.

II.

The court visitor argues, as an initial matter, that the conservator lacked "sufficient prior court approval" to enter into the family leases in the first place, and thus the district court acted within its power to require changes to leases that had never been authorized. Under Iowa law, a conservator generally must give notice and receive specific prior authorization from the court before the conservator may take certain actions on the ward's behalf. *Id.* § 633.647 (2017). The law specifically requires prior authorization before a conservator may lease a ward's real property. *Id.* § 633.647(2).

But under these facts, we find the conservator had specific prior authorization to enter into the family leases. Marvin's guardian ad litem

filed the family settlement agreement with its attached family council recommendation. No one opposed or requested a hearing on the application. The conservator thereafter sought an order "authorizing and directing the Conservator to execute and enter into any and all agreements, leases and instruments, and to perform all other acts necessary or appropriate to manage the Ward's farm land." Again, no one filed any objection or requested a hearing. To the contrary, the guardian ad litem filed an answer to the conservator's motion stating that it would be in Marvin's best interest to authorize the conservator to enter into the leases "as long as the Conservator gives appropriate consideration to the family settlement agreement filed herein on January 31, 2017 and exercises such authority in accordance with their fiduciary duty to the ward." The district court granted the application and ordered the conservator to enter into the farm leases. The conservator dutifully complied. The process undertaken fulfilled the process required by law. *See* Iowa Code §§ 633.388 (requiring a request to lease property to "set forth the reasons for the application and describe the property involved"), .389 (requiring notice to interested persons), .647 (requiring notice and prior approval by the court). The conservator didn't need to go back to the district court for yet another authorization to enter into the family leases.

Michael, Mark, and the court visitor argue more forcefully that Marvin's handshake leases never actually included the $40-per-acre discounts included in the conservator's leases, and that the conservator thus breached its fiduciary duty to Marvin because the conservator's request for authorization was founded on a misrepresentation. The curious quirk here, of course, is that the misrepresentation the conservator relied on was perpetrated by the same two siblings—Michael and Mark—advancing this argument. Roxann contends that, certainly as

to the conservator's leases with the Wheatley family, the leases are consistent with Marvin's past practice and there has been no misrepresentation that would warrant reforming them.

A conservator owes a fiduciary duty to the ward. Iowa Code § 633.3(17); *In re. Conservatorship of Rininger,* 500 N.W.2d 47, 50 (Iowa 1993). We find no breach of fiduciary duty in the conservator's conduct. Again, all three of Marvin's children entered into the family settlement agreement with its attached recommendation stating that the proposed $40-per-acre discount was consistent with Marvin's past course of dealing. The district court entered an order approving the family settlement agreement as requested. Our jurisprudence establishes that family settlement agreements are favored in law. *Gustafson v. Fogleman,* 551 N.W.2d 312, 314 (Iowa 1996). Courts have long promoted the voluntary settlement of legal disputes, and courts likewise refrain from inordinately scrutinizing the parties' terms of settlement. *Wright v. Scott,* 410 N.W.2d 247, 249 (Iowa 1987). We've noted exceptions in prior cases, but those exceptions aren't implicated in this case. *See In re Est. of Swanson,* 239 Iowa 294, 302, 31 N.W.2d 385, 390 (1948).

Only after the district court authorization and the conservator's consummation of the family leases did Mark and Michael claim that the discount was inconsistent with Marvin's past practice. Roxann, meanwhile, steadfastly maintained the veracity of the discount and its alignment with Marvin's past practice. The conservator in this situation didn't breach its fiduciary duty when it relied on information from all three of the ward's children, each of whom was uniquely—if not ideally—positioned to provide information on the ward's past leasing practices with them. We're presented with no grounds for the conservator to have disbelieved the family members prior to entering into the leases. Marvin's

own guardian ad litem—tasked in this role with "advocat[ing] for the best interests of the ward," *Est. of Leonard ex rel. Palmer v. Swift*, 656 N.W.2d 132, 142 (Iowa 2003)—endorsed providing the $40-per-acre discounts and 2030 lease terms in response to the conservator's motion seeking authorization. Under the facts of this case, we cannot find the conservator acted imprudently or disloyally to the ward by including the $40-per-acre discounts, and we thus find no breach of the conservator's fiduciary duty on this ground.

Concerning the unusual length of the family lease terms (to 2030) as indicating a breach of the conservator's fiduciary duty, Marvin's will specified that his property wouldn't be liquidated until 2030, at which time it would be donated to a charity he'd selected. Marvin might reasonably have selected the year 2030 so his children could continue farming his land until they neared a typical retirement age. The conservator's inclusion of the 2030 lease term suggests consistency with, not contradiction of, Marvin's wishes, and we again find no breach of fiduciary duty on this ground. *See* Iowa Code § 633.644 (authorizing orders in a conservatorship that preserve a living ward's testamentary intent expressed in a prior will); *see also id.* §§ 633.641(2) (2020) (conservators when investing or selecting property for distribution "shall consider any estate plan or other donative, nominative, or appointive instrument of the protected person") .670 (conservators in managing estate assets must take into account "the protected person's preference, values, and prior directions to the extent known to, reasonably ascertainable").

Marvin's interactions with the two farm management companies that led to a proposal that included a $25-per-acre discount for family members doesn't dictate a different result. The lack of written leases, coupled with the fact one set of family members didn't know the rental

rates that Marvin provided to others, leaves us without certainty of the amount of discount Marvin actually provided to each of his family members. The farm management company interactions suggest Marvin did, in fact, provide discounts to family tenants, contrary to the thrust of Mark's testimony otherwise. And Marvin, we mustn't forget, elected *not* to accept the farm management company's proposal with its $25-per-acre discount. The farm management company interactions prove neither that Marvin's *past practice* involved discounts of $25 per acre nor that his *future wish* involved discounts in that amount.

Michael, Mark, and the court visitor further argue we should find a breach of fiduciary duty nonetheless because the conservator made statements during the course of the proceedings below suggesting it admitted it had breached its fiduciary duties by entering into the family leases. But reading the record in full, we find the conservator more accurately poses questions as opposed to concessions. The conservator's motion asked the court to determine *whether* the conservator breached its duties by relying on what Michael and Mark later claimed were misrepresentations, which was the initial step (and initial question) the district court needed to address. We find no breach of fiduciary duty based on this argument.

Even without a breach of the conservator's fiduciary duty, Michael, Mark, and the court visitor argue that the brothers' misrepresentations in the family council's recommendation (attached to the court-approved family settlement agreement) misled the district court and caused the court to authorize the family leases under false pretenses. The district court, they argue, thus properly exercised its equitable powers to protect the ward through reforming the leases under an inherent authority to protect the ward.

But the court generally protects a ward in a conservatorship not through exercising some unrestrained equitable power of its own but through exercising control over *the conservator.* *See, e.g.*, Iowa Code §§ 633.641 (2017) (prescribing the duties of a conservator), .668 (prescribing when a conservator may make gifts), .670 (prescribing the reporting duties of a conservator). The Iowa Code makes most significant actions by conservators subject to prior authorization from the court. *Id.* § 633.647(1)–(8). The specific prior authorization requirement reveals where the legislature sought to place the court's oversight function: *before* the conservator acts.

The logic of a *pre*-authorization focus needs little exposition, as we've long held that once an action is completed, a conservator's action binds a ward in the same way any legally competent person may bind himself. *See Kowalke v. Evernham*, 210 Iowa 1270, 1278, 232 N.W. 670, 674 (1930) ("When duly authorized, a guardian, without becoming personally liable himself, may bind the ward's estate for an obligation."); *cf. In re Est. of Harker*, 113 Iowa 584, 588, 85 N.W. 786, 787 (1901). Requiring specific prior authorization for conservator action appears throughout the Iowa Code's conservatorship provisions; after-the-fact judicial reformation of preapproved conservator action appears nowhere in these provisions.

The court visitor also cites to section 633.10 as granting the district court power to modify contracts a conservator enters into on a ward's behalf. But that statute grants the court no such power. Section 633.10 is a jurisdictional statute. *See* Iowa Code § 633.10 (titled "Jurisdiction"). It states that "the district court sitting in probate shall have jurisdiction of . . . [c]onservatorships and guardianships," including "the administration, settlement and closing of conservatorships." *Id.* § 633.10(3). Yet the district court's jurisdiction over the administration of an estate does not,

without more, permit the court to rewrite contracts that it previously authorized the conservator to enter into and where the conservator breached no fiduciary duty to the ward.

Parties seeking to set aside a written instrument affecting real estate bear the burden to establish their right to relief by clear, satisfactory, and convincing proof. *Smith*, 325 N.W.2d at 93. Reformation of written instruments generally requires proof "of fraud, deceit, duress, or mutual mistake." Iowa R. App. P. 6.904(3)(*k*); *see also Kufer v. Carson*, 230 N.W.2d 500, 504 (Iowa 1975). In our de novo review, as to the Wheatleys' actions surrounding the leases, we find none of these defects. Marvin's sons and court visitor thus fail to meet their heightened burden of proof to reform the Wheatleys' leases under this argument.

Michael, Mark, and the court visitor raise a further argument: Even if the *leases* were properly authorized, the conservator failed to seek and receive authorization for what must be considered *gifts* to Marvin's family members by virtue of the discounts contained in the leases. As a result, they argue, the conservator would have breached its fiduciary duty to Marvin and the district court would have been empowered to rescind the gifts.

Iowa Code § 633.668 provides that "[f]or good cause shown and under order of court, a conservator may make gifts on behalf of the ward out of the assets under a conservatorship to persons . . . to whom or to which such gifts were regularly made prior to the commencement of the conservatorship." We've never previously addressed whether, when a conservator enters into a lease, a discounted rental rate constitutes a "gift" that brings it within the restrictions on the conservator's powers to make gifts. And "gift" isn't defined in chapter 633.

Yet even if we were to determine the discounts in the leases constituted "gifts" to the tenants, the family settlement agreement (which included the family council's recommendation of the discount), coupled with the district court's June 2018 order authorizing the conservator to enter into farm leases, satisfies the legal requirements of Iowa Code section 633.668 as "regularly made prior to the commencement of the conservatorship." The district court disagreed not with the fact Marvin had previously provided discounts to his family members but merely the amount of the per-acre discount ($40 versus $25). We find the evidence supports the $40-per-acre discount in the Wheatleys' leases (as previously advanced by the entire family council, the guardian ad litem, and the conservator, and authorized by the court) and thus find the discounts were regularly made prior to the conservator's appointment as required by the statute.

### III.

We thus affirm the court of appeals' ruling reversing the district court's order insofar as it modifies the rent rates, duration, and for-profit subleasing rights in the Wheatleys' leases. "[W]hen we grant further review, we have discretion to let the court of appeals decision stand on specific issues," *State v. Swift*, 955 N.W.2d 876, 885 (Iowa 2021), and we do so on the court of appeals' determinations concerning the Chappel Farm issue. We otherwise affirm the district court's ruling in its other determinations.

**DECISION OF THE COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

All justices join this opinion. Waterman, J., files a special concurrence.

#18–1235, *Guardianship & Conservatorship of Jorgensen*

**WATERMAN, Justice (concurring specially).**

I join the court's opinion but write separately to emphasize that today's fact-bound decision should not be interpreted as weakening the statutory requirement for district court approval of gifts that a conservator makes on behalf of a ward from the assets of the conservatorship.

The governing provision of the probate code provides,

> For good cause shown and under order of court, a conservator may make gifts on behalf of the ward out of the assets under a conservatorship to persons or religious, educational, scientific, charitable, or other nonprofit organizations to whom or to which such gifts were regularly made prior to the commencement of the conservatorship, or on a showing to the court that such gifts would benefit the ward or the ward's estate from the standpoint of income, gift, estate or inheritance taxes. The making of gifts out of the assets must not foreseeably impair the ability to provide adequately for the best interests of the ward.

Iowa Code § 633.668 (2017). The ward in this case, Marvin Jorgensen, owned 18,000 acres of Iowa farmland. Before his stroke and resulting conservatorship, he had a longstanding practice of renting land to his children at discounted rates. That practice continued during the conservatorship. In my view, these below-market leases constitute gifts. *See, e.g., Wineman v. CIR*, 79 T.C.M. (CCH) 2189, 2000 WL 839962, at *10 (2000) (holding that "there is no dispute that the below-market rent is a taxable gift"). Yet the discounted leases continued a practice "regularly made prior to the commencement of the conservatorship" as required under Iowa Code section 633.668. Given the size of Jorgensen's estate, the leases at issue would not "impair the ability to provide adequately for the best interests of the ward"—another requirement for court approval of a gift. Iowa Code § 633.668; *see also In re Brice's Guardianship*, 233 Iowa 183, 184, 189–90, 8 N.W.2d 576, 577, 580 (1943) (cautioning that

"payments to one holding no legal obligation against the [ward] should not be authorized unless adequate provision has first been made for the ward" while affirming monthly payments to ward's nephew when "it is certain that neither the ward nor his large estate will ever suffer because of these comparatively small payments").

The district court previously approved the Jorgensen Family Settlement Agreement providing for such discounted leases. The district court's ruling under review in this appeal modified the leases on other grounds, not because of any alleged failure to comply with the court approval requirements of section 633.668. Given the present posture of the case and our de novo review, I agree with our court's determination that in light of the family settlement agreement, the parties to this appeal have failed to show the leases should be set aside or modified. However, the ultimate recipient of the extensive land holdings and beneficiary under Jorgensen's estate, the Mayo Clinic, was not a party to the family settlement agreement and was denied leave to intervene in this appeal after the court of appeals decision restored the leases. The Mayo Clinic has not yet had its day in court on its own challenge to the lease terms as gifts lacking the requisite court approval. Whether the Mayo Clinic's challenge has merit is a question for another day in district court.